IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| REBEL S. RIHA, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 5:15-cv-00021 |
| v. | ) | |
| | ) | <u>REPORT AND RECOMMENDATION</u> |
| COMMISIONER, SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | By:     Joel C. Hoppe |
| Defendant. | ) | United States Magistrate Judge |

Plaintiff Rebel S. Riha asks this Court to review the Commissioner of Social Security's

("Commissioner") final decision denying her application for disability insurance benefits

("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434. The case is

before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative

record, the parties' briefs, and the applicable law, I find that the Commissioner's decision is not

supported by substantial evidence. Therefore, I recommend that the presiding District Judge

**DENY** the Commissioner's Motion for Summary Judgment, ECF No. 13, **REVERSE** the

Commissioner's final decision, and **REMAND** this case for additional administrative

proceedings.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final

decision that a person is not entitled to disability benefits. *See* 42 U.S.C. § 405(g); *Hines v.*

*Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not

"reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for

that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court

asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and

1

whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id*., but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work *See* 20 C.F.R. § 404.1520(a)(4); *Heckler v. Campbell*,

461 U.S. 458, 460–62 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Riha filed for DIB on November 10, 2009. Administrative Record ("R") 85, ECF No. 6. She was 37 years old at the time, *id.*, and had previously worked as a heavy construction equipment operator, landscaper, and factory line worker, R. 229. Riha alleged disability beginning September 22, 2006, because of back and neck problems, traumatic brain injury, chronic obstructive pulmonary disease ("COPD"), spasms, restless leg syndrome, acid reflux, arthritis, anxiety, and depression. R. 85. Disability Determination Services ("DDS"), the state agency, denied her claim initially and on reconsideration. R. 85–100, 102–19. Riha appeared with an attorney at an administrative hearing on August 29, 2013. R. 52–84. She testified to her medical conditions and the limitations those conditions caused in her daily activities. R. 59–77. A vocational expert ("VE") also testified about Riha's work experience and her ability to return to her past work or to perform other work. R. 77–83.

The ALJ denied Riha's application in a written decision dated October 31, 2013. R. 21–45. She identified Riha's date last insured as December 31, 2011, and found that through that date, Riha had severe impairments of degenerative disc disease of the cervical spine post laminectomy and fusion surgery, degenerative disc disease of the lumbar spine, peripheral neuropathy, myofascial pain disorder, migraines, and mental disorders including anxiety, claustrophobia, and depressive disorder. R. 23. She determined that these impairments, alone or in combination, did not meet or equal a listing. R. 24–25. The ALJ next determined that Riha had

the residual functional capacity ("RFC")[1] to do sedentary,[2] unskilled work with some postural and environmental restrictions performed in a static work environment where changes in task are infrequent and explained when they do occur. R. 25–43. Relying on the VE's testimony, the ALJ concluded that Riha could not return to any past relevant work, but could perform other jobs available in the economy, such as inspector/sorter, production worker, and production helper. R. 43–44. She therefore determined that Riha was not disabled under the Act. R. 44. The Appeals Council declined to review that decision, R. 1–3, and this appeal followed.

### III. Relevant Medical Evidence

A.    *Medical Records*[3]

On September 22, 2006, Riha was hit by a dump truck while working on a construction site. R. 63, 319. She was thrown 15 feet into the air, landed in a stone box, and lost consciousness for thirty to sixty seconds. R. 319. After her accident, she reported daily headaches, daily neck pain, intermittent migraines occurring once or twice a week, low back pain, and numbness and tingling in her left arm and leg. *Id.* Riha had a neurological evaluation on November 27, 2006, which found marked limitation in her cervical range of motion in all directions, palpable cervical paraspinous muscle spasms, bilateral trapezius musculature spasm and tenderness, and giveaway weakness in her upper extremities because of pain. R. 319–20. She was treated with multiple prescription medications.

---

[1] A claimant's RFC is the most he or she can do on a regular and continuing basis despite his or her impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying [objects] like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

[3] Because of the significant legal flaws in the ALJ's analysis, the Court dispenses with a detailed recitation of Riha's medical record and provides only a summary.

4

A review of cervical and lumbar MRIs on January 22, 2007, found evidence of head injury, lumbar strain, cervical strain, and cervical stenosis with possible cord injury. R. 468–69. Riha began receiving cervical epidural steroid injections in early 2007, R. 464, and continued to receive them through the end of the year, R. 388–91.

A November 27, 2007, MRI of Riha's cervical spine showed mild developmental cervical spinal stenosis at C4-C7 with superimposed mild multilevel cervical degenerative changes and mild to moderate canal stenosis at C5-C6 with mild deformity of the ventral spinal cord. R. 407. Riha had radiofrequency neurolysis of her bilateral C4-C5 dorsal rami on April 2, 2009. R. 510–12.

On May 28, 2009, James R. Schwartz, M.D., reviewed discograms from July 2008 and May 2009 and recommended Riha undergo cervical fusion, though he stated that "there [are] certainly enough other problems involved that I do not think this will take care of a preponderance of her symptoms." R. 453. A July 6, 2009, MRI showed small central and left posterior disc herniation at C5-C6, with slight compression of the adjacent cervical cord. R. 531–32. Recounting Riha's history, Dr. Schwartz noted that Riha had pursued extensive conservative treatment that had failed to alleviate her chronic neck pain. R. 495, 497. On July 24, Riha underwent anterior cervical discectomy fusion of C4-C5, C5-C6, and C6-C7. R. 495–506. She tolerated the procedure well and was discharged on July 26. R. 495–96.

Riha's treatment after surgery included an August 20, 2009, radiofrequency neurolysis of the bilateral L4-L5 through L5-S1 dorsal rami, R. 507–09, a February 18, 2010, medial branch neural blockade of her left C3-C4 through C5-C6 dorsal rami, R. 611–13, an August 19, 2010, radiofrequency ablation of the left C3-C4 through C5-C6 dorsal rami, R. 614–16, and a February

5

3, 2011, median branch neural blockade of her bilateral L4-L5 and L5-S1 dorsal rami, R. 641–42.

Throughout this time, Riha also sought treatment for mental health issues. She visited the emergency department on April 18, 2008, with complaints of chest pain and vomiting and was diagnosed with chest pain, abdominal pain, and acute anxiety. R. 408–09. On February 2, 2009, Riha established primary care with Danny L. Perry, M.D.. She told Dr. Perry that she had previously been under another physician's care and requested medication for anxiety. R. 598–99. Dr. Perry prescribed Clonazepam for anxiety. R. 599. She continued to see Dr. Perry throughout the relevant period, primarily for her complaints of pain, but also at times for anxiety. *See* R. 600–03, 608–10. On September 4, 2009, Riha reported to the emergency department with chest pain and difficulty breathing and was diagnosed with atypical chest pain and acute anxiety. R. 515–16.

David S. Leen, Ph.D., performed a consultative psychological examination of Riha for DDS on November 24, 2010. R. 619–22. Dr. Leen observed that Riha's affect was dysphoric and restricted and her mood was depressed. His other findings on mental status exam were normal. He diagnosed depressive disorder and claustrophobia and assessed a GAF score of 53.[4] R. 621.

---

[4] GAF scores represent a "clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed. 2000) (*DSM-IV*). The GAF scale is divided into ten 10-point ranges reflecting different levels of symptoms or functioning, with 1–10 being the most symptomatic or least functional, and 91–100 being the least symptomatic or most functional. *See id.* The ranges do not distinguish between symptoms and functional impairments. *See id.* Thus, when "the individual's symptom severity and level of functioning are discordant, the final GAF [score] always reflects the worse of the two." *Id.* at 32–33. A GAF score of 51–60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* at 34.

The American Psychiatric Association now cautions that GAF scores do not adequately convey the information needed to assess an individual's mental state, functional capacities, or treatment needs over time, and it recommends that clinicians cease using them for assessment. *See* Am. Psychiatric Ass'n, *Frequently Asked Questions About DSM-5 Implementation–For Clinicians*, Aug. 1, 2013,

6

*B.    Medical Opinions*

As part of DDS's initial evaluation, Leslie Ellwood, M.D., reviewed Riha's record. R. 94–96. Dr. Ellwood opined that Riha could stand or walk for two hours and sit for six hours in an eight-hour workday; occasionally lift or carry ten pounds and frequently lift or carry less than ten pounds; never climb ladders, ropes, or scaffolds; occasionally balance and crawl; and frequently stoop, kneel, and crouch. Riha had a slow gait secondary to spinal pain. Because of her cervical fusion, she had limited ability to push or pull with her upper extremities and could not reach above her head. Dr. Ellwood also found that Riha should avoid concentrated exposure to hazards, fumes, odors, dusts, gases, and poor ventilation. As part of the same review, Sandra Francis, Psy. D., evaluated Riha's mental capacity. R. 96–98. Dr. Francis opined that Riha's depression caused moderate limitation in her ability to understand and remember detailed instructions, carry out detailed instructions, and maintain attention and concentration for extended periods. Dr. Francis also found that Riha had moderate difficulty maintaining concentration, persistence, or pace; mild difficulty in maintaining social functioning; and mild restriction in her activities of daily living. R. 92.

William Amos, M.D., reviewed Riha's record as part of DDS's reconsideration review. R. 112–15. He concurred with Dr. Ellwood's opinion, except he found that Riha could occasionally perform bilateral overhead reaching and pushing or pulling hand controls. Yvonne Evans, Ph. D., performed DDS's reconsideration mental capacity evaluation and concurred entirely with Dr. Francis's opinion. R. 111, 115–17.

---

http://www.dsm5.org/Documents/FAQ%20for%20Clinicians%208-1-13.pdf. Though GAF scores may be questionable diagnostic tools, changes in assessed scores may still reflect a clinician's observation of improvement or deterioration in their patient.

On December 1, 2011, Dr. Perry completed a mental status evaluation form. R. 673. He diagnosed Riha with chronic cervical pain, chronic back pain, peripheral neuropathy, depression, restless leg syndrome, and bilateral hip pain. He stated that her conditions caused impaired motor functioning with restricted range of motion in her lower back. He opined that she had a depressed affect and impaired attention and concentration, with an inability to stay focused on tasks.

Dr. Leen also assessed Riha's mental capacity as part of his November 24, 2010, consultative evaluation. R. 622. He stated that she was unable to perform complex or challenging work activities, but could consistently perform relatively simple and repetitive work activities in a timely and appropriate manner. He also found that she could maintain reliable workplace attendance; complete a normal workweek without interruptions; deal with usual workplace stressors; and interact appropriately with supervisors, coworkers, and the public.

C.     *Riha's Statements*

Riha completed a function report on July 12, 2010. R. 247–54. She wrote that she can handle her personal care, though it takes a while because of neck and back pain. Her pain interferes with her sleep, and her husband sometimes has to remind her to take medications. She lets the dog out and refills its water if her husband forgets; she prepares simple meals one to two times a week, but her husband does most of the cooking; she tries to fold laundry, wipe countertops, and make beds when she can; and she occasionally drives short distances when her pain allows, but usually has others drive for her. She can count money, but her husband deals with the bills and checking accounts and does nearly all of the shopping. She sings, watches television, talks on the phone, occasionally takes short visits to family, does not go anywhere regularly except to a doctor, and has missed many events in her family's life. She can walk for

8

ten to fifteen minutes before needing to rest. Her conditions affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, understand, and use her hands. She forgets things easily and has difficulty concentrating enough to finish tasks. She experiences depression and claustrophobia and has a prescribed neck brace that she uses when her pain is bad and her claustrophobia allows.

Riha completed a second function report on November 22, 2011. R. 273–80. Her statements were largely consistent with her previous report, though she additionally noted that she makes sure her children do their homework, sews occasionally, and goes to church when she can. She also clarified that she takes medication for insomnia, her husband drives her everywhere, and she used a walker and cane following surgery, but she does not use them anymore.

At the administrative hearing, Riha testified that she has difficulty turning her neck and does not drive often, only occasionally going to a convenience store if she is having a good day. R. 61–62. The ALJ requested that Riha testify to her condition before her date last insured in December 2011. R. 66. Riha said she could sit for fifteen to twenty minutes before needing to change position and stand or walk for five minutes before needing to sit down. R. 66–67. She could carry very light items, and her right hand sometimes gave out causing her to drop what she was holding. R. 67–68. She could generally wash herself, though it was particularly difficult to reach above her head, and her husband helped wash her hair. R. 69. She used inhalers about twice a day as needed to help her breathing. R. 69–70. She did not leave the house often. R. 71–72. She had depression and anxiety and has had panic attacks almost every day since her accident. R. 72. She also experienced migraines every day. R. 74. Riha spent most of her days in bed, sleeping and watching television. R. 74–75. Her husband handled cooking, cleaning, and

9

paying bills. R. 75–76. She used her phone, but did not use a computer. R. 76. She left the house for doctor's appointments and couldn't remember if she went to family dinners during that time. R. 76–77. Her friends and family would often come to see her, but she usually did not go to see them. R. 77. Finally, Riha testified that she had short-term memory loss and would often repeat herself. *Id.*

## IV. Discussion

The ALJ's opinion thoroughly recounted Riha's testimony and the treatment notes, diagnostic studies, and medical opinions in the record. *See* R. 26–42. The ALJ's analysis of that evidence, however, failed to explain key parts of her reasoning, including why the RFC did not account for the moderate difficulties with concentration, persistence, and pace found at step three; how the ALJ assigned weight to the medical opinions; and which of Riha's statements the ALJ found credible and the reasons for those determinations.

An ALJ's RFC assessment "must include a narrative discussion describing" how specific medical facts and nonmedical evidence "support[] each conclusion." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). The ALJ's analysis failed to fulfill that directive to the point that the Court is unable to perform a meaningful review of the ALJ's decision.[5] The ALJ found at step three of her analysis that Riha "had no more than moderate difficulties" with concentration, persistence, and pace, but did not thereafter address how these difficulties affected Riha's ability to work. R. 25. The only part of the ALJ's RFC related to Riha's mental capabilities limits her to "unskilled work" performed "in a static work environment where changes in tasks are infrequent and explained when they do occur." R. 25. A limitation to simple, routine tasks or unskilled work

---

[5] Riha argues in her brief that the ALJ erred when she found that Riha's impairment did not meet listing 1.04A, Pl.'s Br. 4–6, ECF No. 11, as well as generally challenging the ALJ's analysis of the medical opinions and Riha's credibility. Considering the fundamental errors in the ALJ's handling of opinion weight and credibility, which warrant remand, I do not find it necessary to reach the listings argument.

does not necessarily account for a claimant's limitations in concentration, persistence, and pace. *Mascio*, 780 F.3d at 638. "[T]he ability to perform simple tasks differs from the ability to stay on task." *Id.* Likewise, the ability to learn new tasks or adjust to changes in tasks is different from the ability to concentrate on and consistently perform tasks.

In discharging her duty to provide an assessment of a claimant's "work-related abilities on a function by function basis," the ALJ must make specific findings about the impact of a claimant's impairments and credible, related symptoms on her ability to work. *Id.* at 636; *accord Monroe v. Colvin*, -- F.3d --, 2016 WL 3349355, at *9–10 (4th Cir. June 16, 2016). Because the ALJ found that Riha had moderate difficulties in concentration, persistence, and pace, she had an obligation to assess how these limitations impacted Riha's ability to work. Perhaps the ALJ determined that other evidence in Riha's record indicated that those difficulties had no impact; however, without any explication the Court is unable to meaningfully review the ALJ's reasoning. *See* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (noting that an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved").

A similar lack of explication frustrates the Court's review of how the ALJ weighed the medical opinions in the record. "Medical opinions" are statements from "acceptable medical sources," such as physicians, that reflect judgments about the nature and severity of the claimant's impairment, including her symptoms, diagnosis and prognosis, functional limitations, and remaining abilities. 20 C.F.R. § 404.1527(a)(2). The ALJ must explain the weight given to all medical opinions. *Radford v. Colvin,* 734 F.3d 288, 295–96 (4th Cir. 2013).

The ALJ addressed three medical opinions in her analysis. She first stated that "I give substantial weight to the opinions of the two sets of state agency medical-disability experts who

11

reviewed the claimant's records and who both concluded that she had the same residual functional capacity." R. 43. This statement provides no explanation of why she afforded the state-agency opinions substantial weight beyond the fact that they both reached the same conclusion. An ALJ must "include a narrative discussion describing how the evidence supports each conclusion" in their analysis. *Mascio*, 780 F.3d at 636 (quoting SSR 96-8p, 1996 WL 374184, at *7). Although the ALJ thoroughly recounted the medical evidence and opinions, she did not explain how that evidence supported her assessment of the medical opinions or justified the weight she assigned to them. Thus, the ALJ's analysis "is incomplete and precludes meaningful review." *Monroe*, 2016 WL 3349355, at *11.

The ALJ next "afforded little weight" to Dr. Perry's mental status evaluation, explaining that although he wrote that Riha

> was unable to stay focused on tasks, he also wrote that her orientation, appearance, speech, cognition, memory, thought flow and content, and judgment were all within normal limits. He also noted that she was able to manage funds. Dr. Perry is not a mental health professional, and his opinion that the claimant was unable to stay focused on tasks appears to be based solely on the claimant's statements to him and not on any objective observation or testing.

R. 43. Dr. Perry is one of Riha's treating physicians. A treating-source medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in the record." *Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir.2001); 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for the weight assigned to any treating-source medical opinion. 20 C.F.R. § 404.1527(c)(2); *see also Mastro,* 270 F.3d at 178 (the ALJ may reject a treating-source medical opinion "in the face of persuasive contrary evidence" only if he gives "specific and legitimate reasons" for doing so). Her "decision 'must be sufficiently specific to make clear to any subsequent reviewers the weight [she] gave' to the opinion and 'the reasons for that

weight.'" *Harder v. Comm'r of Soc. Sec.*, No. 6:12cv69, 2014 WL 534020, at *4 (W.D. Va. Feb. 10, 2014) (quoting SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

The ALJ's reasons for affording Dr. Perry's opinion little weight are inadequate. The ALJ did not explain why Dr. Perry's finding that Riha would be unable to stay on task is inconsistent with his other findings. Dr. Perry treated Riha for a number of years for symptoms including pain, which certainly could support his opinion that she had difficulty staying on task. As a medical doctor, Dr. Perry acts well within his professional competency to opine about the limiting effects of his patient's symptoms, including pain. *See* 20 C.F.R. § 404.1513(c). Furthermore, the ALJ does not support her statement that Dr. Perry's conclusions appear to be based solely on Riha's statements, and the record suggests otherwise. Both state-agency reviewers and the ALJ herself found that Riha suffered from depression and had moderate difficulties in maintaining concentration, persistence, and pace. Dr. Perry reached similar findings.[6] The ALJ did not explain why she treated Dr. Perry's findings different than the DDS physicians' similar findings, nor did she distinguish it from her own prior finding at step three. The ALJ's inadequate assessment of the opinion evidence significantly erodes the grounds for her RFC determination.

The ALJ's analysis of Riha's credibility and her claims that pain limits her functional abilities is similarly lacking. "[A]n ALJ is required to consider a claimant's pain as part of [her] analysis of residual functional capacity." *Mascio*, 780 F.3d at 639. The regulations set out a two-

---

[6] Dr. Leen is the only physician who did not find that Riha was limited in concentration, persistence, and pace, instead opining that she could "consistently perform relatively simple and repetitive work activities in a timely and appropriate manner." R. 622. The ALJ summarized Dr. Leen's examination and findings, but never analyzed his opinion or assigned it any weight. If the ALJ found this opinion more persuasive than the others, she needed to explain her reasoning and support it with reference to the record. Regardless, the fact that every opinion the ALJ did analyze found that Riha had moderate limitations in concentration, persistence, and pace makes the ALJ's failure to address this limitation in her RFC analysis even more problematic.

13

step process for evaluating a claimant's allegation that she is disabled by symptoms, including pain, caused by a medically determinable impairment. *Fisher v. Barnhart*, 181 F. App'x 359, 363 (4th Cir. 2006) (citing 20 C.F.R. § 404.1529). The ALJ must first determine whether objective medical evidence[7] shows that the claimant has a medically determinable impairment that could reasonably be expected to cause the kind and degree of pain alleged. 20 C.F.R. § 404.1529(a); *see also Craig*, 76 F.3d at 594. If the claimant clears this threshold, then the ALJ must evaluate the intensity and persistence of the claimant's pain to determine the extent to which it affects her physical or mental ability to work. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *see also Craig*, 76 F.3d at 595. The latter analysis often requires the ALJ to determine "the degree to which the [claimant's] statements can be believed and accepted as true." SSR 96-7p, 1996 WL 374186, at *2, *4.

The ALJ must give specific reasons, supported by relevant evidence in the record, for the weight assigned to the claimant's statements. *See Mascio*, 780 F.3d at 639; *Eggleston v. Colvin*, No. 4:12cv43, 2013 WL 5348274, at *4 (W.D. Va. Sept. 23, 2013) (citing SSR 96-7p, 1996 WL 374186, at *4). A reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 68 (4th Cir. 2014) (per curiam) (citing *Edelco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997)); *see also Mascio*, 780 F.3d at 640.

---

[7] Objective medical evidence is any "anatomical, physiological, or psychological abnormalities" that can be observed and medically evaluated apart from the claimant's statements and "anatomical, physiological, or psychological phenomena [that] can be shown by the use of medically acceptable diagnostic techniques." 20 C.F.R. § 404.1528(b)–(c). "Symptoms" are the claimant's description of his or her impairment. *Id.* § 404.1528(a).

This case presents the exceptional circumstance where the ALJ's credibility determination is based on inadequate reasoning. After summarizing Riha's testimony, the ALJ stated, "I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are partially credible for the reasons explained in this decision." The ALJ went on to recite the medical evidence in the record and only addressed Riha's credibility again once, after discussing the state-agency opinions:

> I find the claimant even somewhat more limited than the state agency experts found though when factoring in her partially credible subjective complaints. For example, her subjective complaints of neck pain with use of her arms are supported by the evidence to the degree that she is further limited to no kneeling or crawling but not supported to the degree [of the] allegations that she was precluded from moving her neck. Despite her neck impairment, the claimant still drives a car at times, which implies some ability to turn the neck to safely navigate traffic.

R. 43.

The ALJ found Riha's subjective complaints "partially credible" and supported her conclusion with this one example from the record. One description of the extent to which the record supports Riha's claims of neck pain does not explain to the Court how the ALJ weighed all of Riha's statements, which include two detailed function reports and eighteen pages of testimony at her administrative hearing. Those reports and testimony concern a wide range of physical and mental conditions and describe how those conditions affect her activities of daily living. The ALJ discussed only Riha's statements about neck pain, despite finding that she suffered from severe impairments of degenerative disc disease of the cervical spine post laminectomy and fusion surgery, degenerative disc disease of the lumbar spine, peripheral neuropathy, myofascial pain disorder, migraines, and mental disorders including anxiety, claustrophobia, and depressive disorder. *See* R. 23. The ALJ failed to "explain how [s]he decided

15

which of [Riha's] statements to believe and which to discredit." *Mascio*,780 F.3d at 640. As such, the Court is unable to meaningfully review her analysis. These errors in assessing the medical opinion evidence and Riha's credibility ultimately undermine the ALJ's RFC determination. Accordingly, I find that the Commissioner's decision is not supported by substantial evidence.

V. Conclusion

For the foregoing reasons, I recommend that the presiding District Judge **DENY** the Commissioner's Motion for Summary Judgment, ECF No. 13, **REVERSE** the Commissioner's final decision, and **REMAND** this case for additional administrative proceedings.

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation,] any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: August 5, 2016

Joel C. Hoppe
United States Magistrate Judge